Esther C. Rodriguez
Nevada State Bar No. 006473
**RODRIGUEZ LAW OFFICES, P.C.**
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Tel: (702) 320-8400; Fax: (702) 320-8401
info@rodriguezlaw.com

Richard J. (Rex) Burch*
Texas State Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
rburch@brucknerburch.com

Michael A. Josephson*
Texas State Bar No. 24014780
Andrew W. Dunlap*
Texas State Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100; Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

* To apply for admission *pro hac vice*.

*Attorneys for Fewkes and the Hourly Employees*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| DANIEL FEWKES, Individually and On Behalf of Others Similarly Situated,<br><br>       Plaintiff,<br><br>vs.<br><br>MARIGOLD MINING COMPANY,<br><br>       Defendant. | **Case No. _____**<br><br>**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>(1) Failure to Pay Overtime Wages (Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*);<br><br>(2) Failure to Pay for All Hours Worked Under Nevada Law (Nev. Rev. Stat. §§ 608.140 and 608.016).<br><br>(3) Failure to Pay Minimum Wages in Violation of the Nevada Constitution;<br><br>(4) Failure to Pay Overtime under Nevada Law (Nev. Rev. Stat. §§ 608.140 and 608.018); and<br><br>(5) Failure to Timely Pay All Wages Due and Owing Under Nevada Law (Nev. Rev. Stat. §§ 608.140 and 608.020-050). |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Daniel Fewkes (Fewkes) brings this class and collective action to recover unpaid wages and other damages from Marigold Mining Company (Marigold) for violations of the Fair Labor Standards Act (FLSA) and Nevada law.

2.      Marigold employed Fewkes as one of its Hourly Employees (defined below).

3.      Marigold pays Fewkes and the other Hourly Employees by the hour.

4.      Fewkes and the other Hourly Employees regularly work more than 40 hours a workweek.

5.      However, Marigold does not pay Fewkes and the other Hourly Employees for all their hours worked, including overtime hours.

6.      Rather, Marigold requires Fewkes and the other Hourly Employees to suit out in protective clothing and safety gear necessary to safely perform their job duties and attend a "turnover" meeting "off the clock" prior the start of their shifts.

7.      Likewise, Marigold requires Fewkes and the other Hourly Employees to wash-up and change out of their safety gear and protective clothing "off the clock" following the end of their shifts (¶¶ 6 and 7 together comprise Marigold's "pre/post shift off the clock policy").

8.      But Marigold does not pay Fewkes and the other Hourly Employees for this "off the clock" time before and after their shifts.

9.      Marigold likewise does not authorize or permit Fewkes and the other Hourly Employees to take meal or rest periods, in violation of NRS § 608.019.

10.     Rather, Marigold requires them to perform their job duties throughout their shifts.

11.     Marigold's pre/post shift off the clock policy violates the FLSA and Nevada law by depriving Fewkes and the other Hourly Employees of wages, including overtime wages, for all hours worked.

12.    In addition to failing to pay Fewkes and the other Hourly Employees for all their hours worked, Marigold also fails to pay them overtime at the required premium rate.

13.    Instead, Marigold pays them shift differentials and non-discretionary bonuses calculated based on production and safety, as well as the number of hours worked by each Hourly Employee (Marigold's "bonus pay scheme").

14.    Marigold's bonus pay scheme violates the FLSA and Nevada law by depriving Fewkes and the other Hourly Employees of overtime at rates not less than 1.5 times their regular rates of pay —based on all remuneration—for hours worked in excess of 40 a workweek.

15.    Finally, Marigold's pre/post shift off the clock policy and bonus pay scheme violate Nevada law by depriving Fewkes and the other Hourly Employees of timely payment of earned wages for all hours worked, including overtime hours, upon termination of their employment.

### JURISDICTION & VENUE

16.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA, 29 U.S.C. § 216(b).

17.    This Court has supplemental jurisdiction of the state-law claims because they arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

18.    This Court has general personal jurisdiction over Marigold because Marigold is a Nevada corporation.

19.    Venue is proper because Marigold is a Nevada corporation and Fewkes worked in Marigold's Nevada mine, which is in this District. *See* 28 U.S.C. § 1391(b).

### PARTIES

20.    Marigold has employed Fewkes in its Nevada mine from approximately November 2014 through July 2024.

21.    Marigold classified Fewkes as non-exempt and paid him by the hour.

22.    Marigold subjected Fewkes to its pre/post shift off the clock policy and bonus pay scheme.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Fewkes v. Marigold Mining Company*

23. Fewkes' written consent is attached as **Exhibit 1**.

24. Fewkes brings this class and collective action on behalf of himself and other similarly situated Marigold employees who were also subject to Marigold's pre/post shift off the clock policy and/or bonus pay scheme.

25. The FLSA collective of similarly situated employees is defined as:

**All hourly Marigold employees during the past 3 years through final resolution of this action ("FLSA Collective Members").**

26. Fewkes also seeks to represent a class under Nevada law pursuant to FED. R. CIV. P. 23.

27. The Nevada Class of similarly situated employees is defined as:

**All hourly Marigold employees in Nevada during the past 3 years through final resolution of this action ("Nevada Class Members").**

28. The FLSA Collective Members and Nevada Class Members are collectively referred to as the "Hourly Employees."

29. Marigold is a Nevada corporation.

30. Marigold may be served with process by serving its registered agent: **National Registered Agents, Inc., 701 S. Carson St., Ste. 200, Carson City, Nevada 89701**.

### FLSA COVERAGE

31. At all relevant times, Marigold has been an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

32. At all relevant times, Marigold has been an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

33. At all relevant times, Marigold has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Fewkes v. Marigold Mining Company*

otherwise working on goods or materials—such as personal protective equipment, tools, computers, etc.—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1)

34.    At all relevant times, Marigold has had an annual gross volume of revenue made or business done of over $1,000,000 each year.

35.    At all relevant times, Fewkes and the other Hourly Employees have been Marigold's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

36.    At all relevant times, Fewkes and the other Hourly Employees have been engaged in commerce or in the production of goods for commerce.

## FACTS

37.    Marigold's Nevada Mine has been "[i]n production since 1989 [and] is a large run-of-mine heap leach operation with several open pits, waste rock stockpiles, leach pads, a carbon absorption facility, and a carbon processing and gold refining facility" with "[p]robable Mineral Reserves of 2.6 million ounces of gold."[1]

38.    To meet its business objectives, Marigold hires workers, like Fewkes and the other Hourly Employees.

39.    While exact job titles and precise job duties may differ, Fewkes and the other Hourly Employees are all subject to Marigold's same or similar illegal policies—its pre/post shift off the clock policy and bonus pay scheme—while performing the same or similar work.

40.    For example, Fewkes worked for Marigold as a equipment operator in its Nevada gold mine from approximately November 2014 until July 2024.

41.    As an equipment operator, Fewkes' job duties included operating self-propelled machinery to collect dirt and rock and then load the collected dirt and rock onto conveyors, shuttle cars, or trucks.

---

[1] https://www.ssrmining.com/operations/production/marigold/ (last visited January 18, 2025).

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Fewkes v. Marigold Mining Company*

42.     Fewkes' job duties likewise included donning and doffing safety gear and protective clothing and attending turnover meetings (among other meetings) on Marigold's premises, "off the clock," before and after his scheduled shifts.

43.     Marigold paid Fewkes by the hour.

44.     Marigold paid Fewkes approximately $43 an hour.

45.     Throughout his employment, Fewkes worked 4 to 5 days a week for approximately 12 hours a day "on the clock" (48 to 60 hours a workweek).

46.     Likewise, the other Hourly Employees generally work 4 to 5 days a week for approximately 12 hours a day "on the clock" (48 to 60 hours a workweek).

47.     But Fewkes did not clock in and out or otherwise record his actual hours worked.

48.     Rather, Marigold management recorded his hours worked each workday and workweek as the hours of his scheduled shifts.

49.     Likewise, Marigold management recorded the other Hourly Employees' hours worked each workday and workweek as their scheduled shifts.

50.     Thus, Marigold do not accurately track the number of hours Fewkes and the other Hourly Employees actually work in a given workday or workweek.

51.     And throughout their employment, Marigold has failed to pay Fewkes and the other Hourly Employees for all of their hours worked.

52.     Instead, Marigold subjects Fewkes and the other Hourly Employees to its pre/post shift off the clock policy.

53.     For example, Marigold required Fewkes to arrive at the mine, dress out in his required protective clothing and safety gear (including hard hat, reflective clothing, ear protection, steel toed boots, safety glasses, gloves), fundamentally necessary to performing his job and attend a shift turnover meeting, in which equipment operators coming off shift informed Fewkes of necessary information for the day's work, prior to his shifts, "off the clock," and without compensation.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Fewkes v. Marigold Mining Company*

54.     This integral and indispensable work took Fewkes approximately 35 to 45 minutes each workday.

55.     Fewkes could not perform his job duties in accordance with Marigold's policies, procedures, and expectations without this protective clothing, safety gear, and turnover meeting.

56.     Fewkes could not safely perform his job duties in accordance with Marigold's policies, procedures, and expectations without this protective clothing, safety gear, and turnover meeting.

57.     Indeed, much of the safety gear Fewkes must utilize is mandated by federal regulation. *See e.g.*, 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq.*

58.     The donning of protective clothing and safety gear and attending turnover meetings each workday are integral and indispensable work duties for Fewkes.

59.     Likewise, Marigold requires Fewkes to remove his safety gear and protective clothing and wash up after his shifts "off the clock" and without compensation.

60.     This took Fewkes approximately 30 to 40 minutes each workday.

61.     Fewkes could not perform his job duties in accordance with Marigold's policies, procedures, and expectations without removing his safety gear and protective clothing and washing up each workday.

62.     Fewkes could not safely perform his job duties in accordance with Marigold's policies, procedures, and expectations without removing his safety gear and protective clothing and washing up each workday.

63.     The removal and storing of his safety gear and protective clothing and washing up are therefore integral and indispensable work duties for Fewkes.

64.     But under its pre/post shift off the clock policy, Marigold does not compensate Fewkes for the same.

65.     Thus, because of its pre/post shift off the clock policy, Marigold fails to pay Fewkes wages for all hours worked, including overtime wages for all his overtime hours worked, in violation of the FLSA and Nevada Law.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Fewkes v. Marigold Mining Company*

66.     And Marigold did not authorize or permit Fewkes to take meal or rest periods. *See* Nev. Rev. Stat. § 608.019 and Nev. Admin. Code § 608.145.

67.     Rather, Marigold requires Fewkes to perform his regular job duties throughout his shifts.

68.     Fewkes and the other Hourly Employees perform their jobs under Marigold's supervision and use materials, equipment, and technology Marigold approves and supplies.

69.     Marigold requires Fewkes and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

70.     At the end of each pay period, Fewkes and the other Hourly Employees receive wages from Marigold that are determined by common systems and methods that Marigold selects and controls.

71.     But, just as with Fewkes, Marigold fails to pay the other Hourly Employees for all their hours worked.

72.     Indeed, Marigold subjects the other Hourly Employees to its pre/post shift off the clock policy it imposed on Fewkes.

73.     Specifically, like Fewkes, Marigold requires the other Hourly Employees to dress out in their protective clothing and safety gear (including hard hat, reflective clothing, ear protection, steel toed boots, safety glasses, gloves), fundamentally necessary to performing their jobs and attend shift turnover meetings, in which Hourly Employees coming off shift informed Hourly Employees coming on shift of necessary information for the upcoming day's work, prior to their shifts, "off the clock," and without compensation.

74.     As with Fewkes, much of the safety gear the other Hourly Employees must utilize is mandated by federal regulation. *See e.g.*, 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq.*

75.     And like Fewkes, Marigold requires the other Hourly Employees to remove and store their safety gear and protective clothing and wash up after "clocking out" for their shifts, "off the clock" and without compensation.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Fewkes v. Marigold Mining Company*

76.    But, like Fewkes, the other Hourly Employees are forced to perform this compensable work "off the clock" before and after their scheduled shifts.

77.    And, just as with Fewkes, Marigold does not pay the other Hourly Employees for this integral and indispensable work they perform "off the clock" before and after their scheduled shifts.

78.    And like Fewkes, these job duties take the other Hourly Employees approximately an hour and 5 minutes to an hour and 25 minutes each workday.

79.    Marigold fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing work "off the clock" (on its premises) that Marigold does not want performed.

80.    And Marigold knows, should know, or recklessly disregards whether Fewkes and the other Hourly Employees routinely perform work "off the clock," and without compensation, before and after their scheduled shifts.

81.    Thus, Marigold requires, requests, suffers, permits, or allows Fewkes and the other Hourly Employees to perform compensable work "off the clock," without compensation, before and after their scheduled shifts.

82.    Despite accepting the benefits, Marigold does not pay Fewkes and the other Hourly Employees for the compensable work they perform "off the clock" before and after their scheduled shifts.

83.    Thus, under Marigold's pre/post shift off the clock policy, Fewkes and the other Hourly Employees are denied wages, including overtime wages, for compensable work they perform "off the clock" before and after their scheduled shifts, in violation of the FLSA and Nevada law.

84.    And, just as with Fewkes, Marigold does not authorize or permit the other Hourly Employees to take meal or rest periods. *See* Nev. Rev. Stat. § 608.019 and Nev. Admin. Code § 608.145.

85.    Rather, like Fewkes, Marigold requires the other Hourly Employees to perform their regular job duties throughout their shifts.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Fewkes v. Marigold Mining Company*

86.     Further, throughout their employment, Marigold has paid Fewkes and the other Hourly Employees according to its bonus pay scheme.

87.     Specifically, Marigold pays Fewkes and the other Hourly Employees shift differentials and non-discretionary bonuses calculated based on factors including safety and production and the number of hours worked by each Hourly Employee.

88.     Marigold knew these non-discretionary bonuses and shift differentials should have been, but were not, included in Fewkes' and the other Hourly Employees' regular rates of pay for overtime purposes.

89.     As a result, Marigold failed to pay Fewkes and the other Hourly Employees overtime at a rate not less than 1.5 times their regular rates of pay—based on all remuneration—for hours worked over 40 a workweek, in violation of the FLSA and Nevada law.

CLASS & COLLECTIVE ACTION ALLEGATIONS

90.     Fewkes brings his claims as a class and collective action under Section 216(b) of the FLSA and under Nevada law pursuant to Fed. R. Civ. P. 23.

91.     Like Fewkes, the other Hourly Employees are victimized by Marigold's pre/post shift off the clock policy and/or bonus pay scheme.

92.     Other Hourly Employees worked with Fewkes and indicated they were paid in the same manner, performed similar work, and were subject to Marigold's same pre/post shift off the clock policy and/or bonus pay scheme.

93.     Based on his experiences with Marigold, Fewkes is aware Marigold's pre/post shift off the clock policy and bonus pay scheme were imposed on other Hourly Employees.

94.     The Hourly Employees are similarly situated in the most relevant respects.

95.     Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to wages for all hours worked, including overtime wages.

96.     Rather, the Hourly Employees are held together by Marigold's pre/post shift off the clock policy and bonus pay scheme, which systematically deprive Fewkes and the other Hourly Employees of required wages, including required overtime wages, for all hours worked, including hours in excess of 40 hours a workweek.

97.     Therefore, the specific job titles or precise job locations of the Hourly Employees do not prevent class or collective treatment.

98.     Marigold's failure to pay these employees "straight time" and overtime wages at the rates required by the FLSA and/or Nevada law results from generally applicable, systematic policies, and practices that are not dependent on the personal circumstances of the Hourly Employees.

99.     The Hourly Employees are denied overtime wages at the required premium rates for all overtime hours worked when they work more than 40 hours in a workweek.

100.    Marigold's records show the number of hours the Hourly Employees worked "on the clock" each workweek.

101.    The back wages owed to Fewkes and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

102.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Marigold's records, and there is no detraction from the common nucleus of liability facts.

103.    Therefore, the issue of damages does not preclude class or collective treatment.

104.    Fewkes' experiences are therefore typical of the experiences of the other Hourly Employees.

105.    Fewkes has no interest contrary to or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

106.    Like each Hourly Employee, Fewkes has an interest in obtaining the unpaid wages owed under federal and Nevada law.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Fewkes v. Marigold Mining Company*

107.    Fewkes and his counsel will fairly and adequately protect the interests of the other Hourly Employees.

108.    Fewkes retained counsel with significant experience in complex class and collective action litigation.

109.    A class and collective action is superior to other available means for fair and efficient adjudication of this action.

110.    Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Marigold will reap the unjust benefits of violating the FLSA and Nevada law.

111.    Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome.

112.    Indeed, the multiplicity of actions would create a hardship for the Hourly Employees, the Court, and Marigold.

113.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

114.    The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual Hourly Employees.

115.    Among the common questions of law and fact are:

   a.    Whether Marigold's pre/post shift off the clock policy failed to compensate the Hourly Employees for all hours worked;

   b.    Whether Marigold's pre/post shift off the clock policy deprived the Hourly Employees of overtime when they worked more than 40 hours in a workweek;

   c.    Whether Marigold's pre/post shift off the clock policy deprived the Hourly Employees of earned wages upon termination of employment;

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Fewkes v. Marigold Mining Company*

d.  Whether Marigold's bonus pay scheme deprived the Hourly Employees of overtime at the required rate, based on all remuneration, when they worked more than 40 hours in a workweek;

e.  Whether Marigold's bonus pay scheme deprived the Hourly Employees of earned wages, including overtime wages, upon termination of employment;

f.  Whether Marigold's decision not to pay the Hourly Employees all "straight time" and overtime wages due was made in good faith; and

g.  Whether Marigold's violations were willful?

116.  Fewkes knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

117.  Marigold's pre/post shift off the clock policy and bonus pay scheme deprives Fewkes and the other Hourly Employees of wages, including overtime wages, they are owed under federal and Nevada law.

118.  There are many similarly situated Hourly Employees who have been denied wages, including overtime wages, in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

119.  The Hourly Employees are known to Marigold and can be readily identified and located through Marigold's business and personnel records.

**MARIGOLD'S VIOLATIONS WERE WILLFUL**

120.  Marigold knew it was subject to the FLSA's overtime provisions and Nevada Law's minimum wage, hours of work, overtime, and earned wages provisions.

121.  Marigold knew the FLSA and Nevada law required it to pay non-exempt employees, including the Hourly Employees, overtime at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Fewkes v. Marigold Mining Company*

122.    Marigold knew each Hourly Employee worked more than 40 hours in at least one workweek during the relevant period.

123.    Marigold knew it paid its Hourly Employees according to its pre/post shift off the clock policy and/or bonus pay scheme.

124.    Marigold knew it had a duty to ensure its Hourly Employees were not performing work "off the clock" (without pay).

125.    Marigold knew it required the Hourly Employees to don and doff safety gear and protective clothing, attend meetings, and wash-up "off the clock."

126.    Marigold knew it controlled the Hourly Employees' work procedures.

127.    Marigold knew its Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs.

128.    Marigold knew its Hourly Employees' mandatory "off the clock" work was an integral and indispensable requirement of their jobs.

129.    Marigold knew its Hourly Employees routinely performed this daily, required "off the clock" work for Marigold's benefit.

130.    In other words, Marigold knew its Hourly Employees performed compensable work (*e.g.*, donning/doffing their safety gear and protective clothing, attending meetings, and washing-up) "off the clock" and without compensation.

131.    Marigold knew it paid the Hourly Employees non-discretionary bonuses that were required to be included in their regular rates of pay.

132.    Marigold knew its pre/post shift off the clock policy and bonus pay scheme failed to compensate the Hourly Employees for all hours worked, including overtime hours.

133.    Marigold knew, should have known, or showed reckless disregard for whether its conduct described in this Complaint violated the FLSA and Nevada law.

134.    Marigold knowingly, willfully, and/or in reckless disregard carried out its pre/post shift off the clock policy and bonus pay scheme that systematically deprived the Hourly Employees

of "straight time" wages, earned wages, and overtime for their hours worked over 40 in a workweek, in violation of the FLSA and Nevada law.

**COUNT I**

**FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA**
**(FLSA COLLECTIVE)**

135.    Fewkes bring his FLSA claim as a collective action on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

136.    Marigold violated, and is violating, the FLSA by employing non-exempt employees (Fewkes and the other FLSA Collective Members) in a covered enterprise for workweeks in excess of 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

137.    Marigold's unlawful conduct harmed Fewkes and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

138.    Accordingly, Marigold owes Fewkes and the other FLSA Collective Members the difference between the rate actually paid and the required overtime rate, based on all remuneration.

139.    Because Marigold knew, or showed reckless disregard for whether, its pre/post shift off the clock policy and bonus pay scheme violated the FLSA, Marigold owes Fewkes and the other FLSA Collective Members these wages for at least the past 3 years.

140.    Marigold is also liable to Fewkes and the other FLSA Collective Members for an amount equal to all their unpaid wages as liquidated damages.

141.    Finally, Fewkes and the other FLSA Collective Members are entitled to recover all reasonable attorney's fees and costs incurred in this action.

**COUNT II**

**FAILURE TO PAY FOR ALL HOURS WORKED**
**(NEVADA CLASS MEMBERS)**

142.    Fewkes brings his claim for failure to pay for all hours worked as a class action on behalf of himself and the other Nevada Class Members under Nevada law pursuant to Fed. R. Civ P. 23.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Fewkes v. Marigold Mining Company*

143.     Fewkes has a private cause of action for unpaid wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

144.     At all relevant times, Marigold was subject to Nevada law because Marigold was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

145.     At all relevant times, Marigold employed Fewkes and each Hourly Employee as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

146.     NRS 608.016 provides that "an employer shall pay to the employee[s] wages for each hour the employee[s] worked." Nev. Rev. Stat. § 608.016.

147.     Specifically, pursuant to the Nevada Administrative Code, hours worked includes "all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee." Nev. Admin. Code 608.115(1).

148.     Marigold failed to compensate Fewkes and the other Nevada Class Members for all hours worked, as described in this Complaint.

149.     Accordingly, Fewkes "bring[s] a civil action to recover the difference between the amount paid to [Fewkes and the Nevada Class Members] and the amount of the minimum wage," for each hour worked. Nev. Rev. Stat. § 608.260.

150.     As noted, Marigold did not compensate Fewkes and the other Nevada Class Members for integral and indispensable work before and after their shifts, performed under Marigold's direction and control and on Marigold's premises.

151.     Nevada's Minimum Wage Amendment to the Nevada Constitution, Nev. Const. Art. 15, § 16, guarantees a minimum wage for each individual hour worked, rather than as an average over a workweek. *See Porteous v. Capital One Servs. II, LLC*, 809 F. App'x 354, 357 (9th Cir. 2020).

152.     Fewkes and the other Nevada Class Members have been deprived of their rightfully earned wages as a direct and proximate result of Marigold's company-wide policies and practices.

153.     As a direct and proximate result, Fewkes and the other Nevada Class Members have suffered, and continue to suffer, substantial damages.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Fewkes v. Marigold Mining Company*

154.    Marigold regularly, willfully, and repeatedly failed and continues to fail to make, keep, and preserve accurate time records required by NRS 608.115, with respect to Fewkes and the Nevada Class Members.

155.    Through this unlawful course of conduct, Marigold has deprived and continues to deprive Fewkes and the Nevada Class Members of records necessary to calculate with precision the compensation due to them.

156.    Marigold's actions were (and are) willfully oppressive, fraudulent and malicious, entitling Fewkes and the Nevada Class Members to punitive damages.

157.    Marigold's violations were intentional and, as such, the three-year statute of limitation found in N.R.S. § 11.190(3) applies to the claims.

158.    In accordance with N.R.S. 608.140, demand has been made to Marigold for wages and penalties due on a class-wide basis, in writing, at least 5 days before this suit was filed.

159.    Accordingly, Fewkes and the Nevada Class Members are entitled to recover their regular hourly rate of pay or the minimum wage rate, whichever is higher, for all unpaid hours worked, punitive damages, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law. *See* Nev. Rev. Stat. § 608.005 *et seq.*

### COUNT III
### FAILURE TO PAY MINIMUM WAGES
### (NEVADA CLASS MEMBERS)

160.    Fewkes brings his failure to pay minimum wages claim as a class action on behalf of himself and the other Nevada Class Members under Nevada law and pursuant to Fed. R. Civ P 23.

161.    Fewkes has a private cause of action for unpaid wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

162.    At all relevant times, Marigold was subject to Nevada law because Marigold was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

163.    At all relevant times, Marigold employed Fewkes and each Nevada Class Member as

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Fewkes v. Marigold Mining Company*

its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

164.    Nev. Const. Art. 15, § 16 sets forth the minimum wage requirements in the State of Nevada. Section 16 provides that:

> The provisions of the section may not be waived by agreement between an individual employee and an employer. . . . An employee claiming violation of the section may bring an action against his or her employer in the courts of the State to enforce the provisions of the section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of the section, including but not limited to back pay, damages, reinstatement or injunctive relief. An employee who prevails in any action to enforce the section shall be awarded his or her reasonable attorney's fees and costs.

165.    Accordingly, Fewkes and the Nevada Class Members are entitled to recover their regular hourly rate of pay or the minimum wage rate, whichever is higher, for all unpaid hours worked, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law.

<u>**COUNT IV**</u>
**FAILURE TO PAY OVERTIME WAGES**
**(NEVADA CLASS MEMBERS)**

166.    Fewkes brings his failure to pay overtime claim as a class action on behalf of himself and the other Nevada Class Members under Nevada law and pursuant to Fed. R. Civ P 23.

167.    Fewkes has a private cause of action for unpaid overtime wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

168.    At all relevant times, Marigold was subject to Nevada law because Marigold was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

169.    At all relevant times, Marigold employed Fewkes and each Nevada Class Member as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Fewkes v. Marigold Mining Company*

170.    Nevada law requires that employers, such as Marigold, pay employees, such as Fewkes and the Nevada Class Members at least 1.5 times their regular rate of pay for all hours worked in excess of 40 a workweek. Nev. Rev. Stat. § 608.018(2).

171.    Fewkes and the Nevada Class Members have been deprived of their overtime wages at the required rate—based on all remuneration—for all hours worked in excess of 40 a workweek as a direct and proximate result of Marigold's pre/post shift off the clock policy and bonus pay scheme.

172.    Marigold regularly, willfully, and repeatedly failed and continues to fail to make, keep, and preserve accurate time records required by NRS 608.115, with respect to Fewkes and the Nevada Class Members.

173.    Through this unlawful course of conduct, Marigold has deprived and continues to deprive Fewkes and the Nevada Class Members of records necessary to calculate with precision the overtime compensation due to them.

174.    Marigold's actions were willfully oppressive, fraudulent and malicious, entitling Fewkes and the Nevada Class Members to punitive damages.

175.    Marigold's violations were intentional and, as such, the three-year statute of limitation found in N.R.S. § 11.190(3) applies to those claims.

176.    In accordance with N.R.S. 608.140, demand has been made to Marigold for wages and penalties due on a class-wide basis, in writing, at least 5 days before this suit was filed.

177.    Accordingly, Fewkes and the Nevada Class Members are entitled to recover unpaid overtime wages owed, punitive damages, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law. *See* N.R.S. § 608.005 *et seq.*

## COUNT V
### FAILURE TO PAY ALL WAGES UPON TERMINATION
### (NEVADA CLASS)

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Fewkes v. Marigold Mining Company*

178.    Fewkes brings his failure to pay overtime claim as a class action on behalf of themselves and the other Nevada Class Members under Nevada law and pursuant to Fed. R. Civ P 23.

179.    Fewkes has a private cause of action for unpaid wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

180.    At all relevant times, Marigold was subject to Nevada law because it was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

181.    At all relevant times, Marigold employed Fewkes and each Nevada Class Member as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

182.    When an employer, such as Marigold, terminates an employee, such as Fewkes or other Nevada Class Members, their wages and compensation earned but unpaid at the moment of discharge immediately become due and payable and become due and payable to a quitting or resigning employee within 7 days or the next regular payday. Nev. Rev. Stat. §§ 608.020 and 608.030.

183.    Employers that do not pay discharged employees all earned wage "[w]ithin 3 days after the wages or compensation of a discharged employee becomes due" and pay all quitting or resigning employees "on the day the wages or compensation is due" are subject to a penalty equivalent to "the wages or compensation of the employee at the same rate from the day the employee resigned, quit or was discharged or placed on nonworking status until paid or for 30 days, whichever is less." Nev. Rev. Stat. 608.040(1)(a-b).

184.    NRS 608.050 grants an "employee lien" to each discharged or laid-off employee for the purposes of collecting the wages or compensation owed to them "in the sum agreed upon in the contract of employment for each day the employer is in default, until the employee is paid in full, without rendering any service therefor; but the employee shall cease to draw such wages or salary 30 days after such default." Nev. Rev. Stat. § 608.050.

185.    By failing to pay Fewkes and the other Nevada Class Members for all hours worked (including minimum wages, regular wages, and/or overtime wages owed) in violation of Nevada law,

at the required rate, based on all remuneration, Marigold has failed to timely pay all wages due and owing to Fewkes and the other Nevada Class Members who have separated their employment.

186.    Marigold's violations were intentional and, as such, the three-year statute of limitation found in N.R.S. § 11.190(3) applies to those claims.

187.    In accordance with N.R.S. 608.140, demand has been made to Marigold for wages and penalties due on a class-wide basis, in writing, at least 5 days before this suit was filed.

188.    Fewkes and Nevada Class Members who are no longer employed by Marigold, respectfully request that the Court award all penalties due in accordance with NRS 608.140 and 608.040, and an additional 30 days' wages under NRS 608.050, together with attorneys' fees, costs, interest as provided by Nevada law. Nev. Rev. Stat. § 608.005 *et seq.*

### JURY DEMAND

189.    Fewkes demands a trial by jury on all Counts.

### RELIEF SOUGHT

WHEREFORE, Fewkes, individually and on behalf of the other Hourly Employees, seeks the following relief:

a.    An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b.    An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c.    An Order appointing Fewkes and his counsel to represent the interests of the Hourly Employees;

d.    An Order finding Marigold liable to Fewkes and the Hourly Employees for their unpaid overtime wages, liquidated damages, and any penalties, owed under the FLSA, plus interest;

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Fewkes v. Marigold Mining Company*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

     e.     An Order finding Marigold liable to Fewkes and the Nevada Class Members for their unpaid minimum wages, overtime wages, earned wages, penalties, and all damages, including punitive damages, owed and available under Nevada law, plus interest;

     f.     A Judgment against Marigold awarding Fewkes and the Hourly Employees all their unpaid wages, including overtime wages, liquidated damages, statutory damages, and any other penalties available under the FLSA and/or Nevada law;

     g.     An Order awarding attorney's fees, costs, and expenses;

     h.     Pre- and post-judgment interest at the highest applicable rates; and

     i.     Such other and further relief as may be necessary and appropriate.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Fewkes v. Marigold Mining Company*

1  Dated: February 4, 2025.                    Respectfully submitted,

2                                              **RODRIGUEZ LAW OFFICES, P.C.**

3                                              By: */s/ Esther Rodriguez*
4                                              Esther C. Rodriguez
                                               Nevada State Bar No. 006473
5                                              10161 Park Run Drive, Suite 150
                                               Las Vegas, Nevada 89145
6                                              Tel: (702) 320-8400; Fax: (702) 320-8401
                                               info@rodriguezlaw.com
7
                                               Michael A. Josephson*
8                                              Andrew W. Dunlap*
                                               **JOSEPHSON DUNLAP LLP**
9                                              11 Greenway Plaza, Suite 3050
                                               Houston, Texas 77046
10                                             713-352-1100 – Telephone
                                               713-352-3300 – Facsimile
11                                             mjosephson@mybackwages.com
                                               adunlap@mybackwages.com
12
                                               Richard J. (Rex) Burch*
13                                             **BRUCKNER BURCH PLLC**
                                               11 Greenway Plaza, Suite 3025
14                                             Houston, Texas 77046
                                               713-877-8788 – Telephone
15                                             rburch@brucknerburch.com
16
                                               *Pro hac vice applications forthcoming*
17
                                               **ATTORNEYS FOR FEWKES &**
18                                             **THE HOURLY EMPLOYEES**
19
20
21
22
23
24
25
26
27
28

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Fewkes v. Marigold Mining Company*

# EXHIBIT 1

**CONFIDENTIAL FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Daniel Fewkes

1. I hereby consent to make a claim against ___Marigold Mining___ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of any agreements concerning settlement, attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against ___Marigold Mining___.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: _Daniel Fewkes (Jan 19, 2025 08:49 PST)_    Date Signed: Jan 19, 2025